# 24-2710-cv

## United States Court of Appeals

*for the*

## Second Circuit

MATTHEW O'LEARY,

*Plaintiff-Appellant,*

— v. —

CITY OF NEW YORK,

*Defendant-Appellee,*

THE NEW YORK CITY DEPARTMENT OF INVESTIGATION,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

EMILY CLAIRE MIMNAUGH
KEVIN TRENT SNIDER
PACIFIC JUSTICE INSTITUTE
*Attorneys for Plaintiff-Appellant*
1580 Grand Point Way, Suite 33171
Reno, Nevada 89533
(916) 857-6900

CP COUNSEL PRESS    (800) 4-APPEAL • (333991)

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... iii

ISSUES PRESENTED FOR APPEAL ........................................... 1

STATEMENT OF JURISDICTION............................................... 1

STATEMENT OF THE CASE........................................................ 2

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................... 3

STATEMENT OF FACTS ............................................................ 5

   A. O'Leary's sincerely held religious beliefs ........................... 5

   B. O'Leary's religious accommodation request ....................... 7

ARGUMENT ................................................................................. 9

   I. STANDARD OF REVIEW IS *DE NOVO* ..................................... 9

   II. THE AMENDED COMPLAINT STATED SUFFICIENT FACTS TO STATE A CLAIM FOR A VIOLATION OF THE FREE EXERCISE OF RELIGION........... 10

   A. A state actor's determination of insincerity of religious belief can be challenged via a 1983 claim........................... 11

      1. The nature of a Free Exercise Clause claim requires confining a review to the fact-sensitive inquiry of sincerity ............................................................... 13

   B. The process for evaluating O'Leary's sincerity constituted a mechanism for individualized review and thus was not generally applicable................................................... 18

CONCLUSION ........................................................................... 21

STATEMENT OF RELATED CASES ....................................... 23

CERTIFICATE OF COMPLIANCE ............................................................. 23

CERTIFICATE OF SERVICE ................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Agudath Isr. v. Cuomo*,
    983 F.3d 620 (2d Cir. 2020)...................................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................ 9, 15

*Bolden-Hardge v. Office of the Cal. State Controller*,
    63 F.4th 1215 (9th Cir. 2023) ................................................................ 16

*Bowen v. Roy*,
    476 U.S. 693 (1986)............................................................................... 20

*Burns v. Warwick Valley Cent. Sch. Dist.*,
    166 F. Supp. 2d 881 (S.D.N.Y. 2001) .................................................... 12

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014)............................................................................... 16

*Chinchilla v. New York City Police Dep't*,
    2024 U.S. Dist. LEXIS 123248 (S.D.N.Y. July 12, 2024) ...................... 11

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*,
    508 U.S. 520 (1993)......................................................................... 18, 21

*Davis v. Fort Bend County*,
    765 F.3d 480 (5th Cir. 2014) .................................................................. 14

*Dixon v. The Hallmark Companies, Inc.*,
    627 F.3d 849 (11th Cir. 2010) ................................................................ 15

*Does 1-11 v. Bd. of Regents of Univ. of Colo.*,
    100 F.4th 1251 (10th Cir. 2024) ............................................................. 21

*E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49 (1st Cir. 2002) .................. 14

*Elrod v. Burns*,
    427 U.S. 347 (1976) .......................................................................... 11

*Emp't Div. v. Smith*,
    494 U.S. 872 (1990) .................................................................... 18, 20

*Ford v. McGinnis*,
    352 F.3d 582 (2d Cir. 2003) ............................................................ 13

*Frazee v. Ill. Dep't of Emp. Sec.*,
    489 U.S. 829 (1989) ........................................................................ 12

*Fulton v. City of Philadelphia*,
    593 U.S. 522 (2021) .................................................................... 18, 20

*Hernandez v. Commissioner*,
    490 U.S. 680 (1989) ........................................................................ 16

*International Audiotext Network v. American Tel. & Tel. Co.*,
    62 F.3d 69 (2nd Cir. 1995) .............................................................. 10

*Jackson v. Mann*,
    196 F.3d 316 (2d Cir. 1999) ............................................................ 13

*Jolly v. Coughlin*,
    76 F.3d 468 (2d Cir. 1996) .............................................................. 12

*Kane v. De Blasio*,
    575 F. Supp. 3d 435 (S.D.N.Y. 2021) ............................................. 11

*Kane v. De Blasio*,
    19 F.4th 152 (2d Cir. 2021) ............................................................ 19

*Lopez v. Cipolini*,
    136 F. Supp. 3d 570 (S.D.N.Y. 2015) ............................................. 13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................ 11

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*,
584 U.S. 617 (2018) ................................................................ 17

*Mozert v. Hawkins Cty. Pub. Sch.*,
765 F.2d 75 (6th Cir. 1985) ................................................... 14

*Nielsen v. Rabin*,
746 F.3d 58 (2d Cir. 2014) .................................................... 10

*Passarella v. Aspirus, Inc.*,
108 F.4th 1005 (7th Cir. 2024) ............................................. 15

*Patrick v. Le Fevre*,
745 F.2d 153 (2d Cir. 1984) ............................................. 14, 15

*Phillips v. City of New York*,
775 F.3d 538 (2d Cir. 2015) .................................................. 20

*Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*,
847 F.3d 92 (2d Cir. 2017) ....................................................... 9

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) ......................................................... 15, 16

*Sung Cho v. City of New York*,
910 F.3d 639 (2d Cir. 2018) ................................................ 9, 10

*Sykes v. James*,
13 F.3d 515 (2d Cir. 1993) .................................................... 10

*Tandon v. Newsom*,
141 S. Ct. 1294 (2021) ........................................................... 19

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*,
450 U.S. 707 (1981) ......................................................... 16, 17

*United States v. Ballard*,
  322 U.S. 78 (1944) ............................................................... 16, 17

*Velez v. Collado*,
  No. 9:22-CV-0362 (AMN/ML), 2023 U.S. Dist. LEXIS 93993
  (N.D.N.Y. May 30, 2023) ........................................................ 13

*Ware v. Valley Stream High Sch. Dist.*,
  75 N.Y.2d 114 (1989) ............................................................. 13

*Watson v. Jones*,
  13 Wall. 679 (1872) ............................................................... 16

*We the Patriots USA, Inc. v. Hochul*,
  17 F.4th 266 (2d Cir. 2021) ................................................ 18, 19

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I ................................................................*passim*

U.S. Const. art. III ........................................................................ 11

## FEDERAL STATUTES AND RULES

28 U.S.C. § 1291 ..................................................................... 1, 2

28 U.S.C. § 1331 ......................................................................... 1

42 U.S.C. § 1983 ......................................................... 1, 4, 10, 11

42 U.S.C. §§ 2000e (Title VII) ..................................................... 2

Fed. R. Civ. P. 12(b)(6) ............................................... 1, 2, 4, 9, 13

## ISSUES PRESENTED FOR APPEAL

**Issue I:** A government employer required vaccination. Due to his beliefs an employee sought a religious exemption. In a fifteen-minute telephonic interview the employee was questioned about the sincerity of his faith. The exemption was denied "because it is not based on a sincerely held religious . . . belief." He was fired. Can the employee state a claim that the imputation of insincerity by his employer infringed his right to the free exercise of religion?

**Issue II:** Based on his faith, an employee seeks an exemption from vaccination. In order to determine an employee's religious sincerity, a government employer conducts an interview to evaluate the specific reasons for the employee's refusal to be vaccinated. Based on that interview, the employer decides whether the employee is sincere and thus entitled to a religious exemption. Is this procedure a mechanism for individualized exemptions or is it a generally applicable regulation?

## STATEMENT OF JURISDICTION

The U.S. District Court for the Southern District of New York had original jurisdiction over this case under 28 U.S.C. § 1331 in that the Complaint alleged violations of the U.S. Constitution actionable under 42 U.S.C. § 1983.

The judgment and order appealed from are final under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1291 in that the district court granted the Defendant's

motion to dismiss, and dismissed the case. This Court therefore has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE CASE

On July 11, 2023, Plaintiff-Appellant, Matthew O'Leary, filed a complaint against the New York City Department of Investigation and the City of New York in the United States District Court, Southern District of New York. A 5–40. The claims brought were for violations of Title VII of the Civil Rights of 1964 (42 U.S.C. §§ 2000e to 2000e-17) and the Free Exercise Clause (U.S. Const. amend. I). *Id*. On December 11, 2023, O'Leary filed an amended complaint and removed the New York City Department of Investigation as a named party since it is an agency of the City of New York (NYC). A 41–68.

On January 5, 2024, NYC moved for dismissal under Rule 12(b)(6) alleging that O'Leary's claims did not meet the requirements of law. A 71. The district court granted the motion and dismissed the case, entering judgment on September 13, 2024. A 175. O'Leary timely filed a notice of appeal on October 10, 2024. A 176. O'Leary hereby appeals the dismissal of claims brought for violation of the Free Exercise Clause (U.S. Const. amend. I).[1]

---

[1] O'Leary does not appeal dismissal of the Title VII claims.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

A special investigator serving the citizens at New York City's Department of Investigation was ordered to undergo vaccination. The vaccines used were developed through the destruction of fetal cells. Mr. O'Leary's conscience was formed from a young age by his religious training in the Roman Catholic Church which instilled in him the sacredness of human life. He experienced a crisis of conscience which forced him to choose between his faith and his livelihood. O'Leary chose God rather than Mammon, and was fired. The conduct of NYC profoundly burdened O'Leary's faith. Based on the guarantees enumerated in the First Amendment, he sought the vindication of his liberty interest in the free exercise of his religion in the courts.

The essential facts are that NYC required vaccination for COVID-19. O'Leary requested a religious exemption. He did so by submitting a form provided by NYC along with additional documentation explaining his religious beliefs as to why he could not be vaccinated. Two officials conducted a fifteen-minute telephonic interview and from that brief encounter determined that his claimed religious beliefs were not sincere. O'Leary appealed but received the same result. He filed suit, and the district court dismissed his case finding that NYC did not infringe O'Leary's free exercise of religion because employers can make inquiries

3

about the sincerity of faith. On appeal, O'Leary argues that his free exercise cause of action was improperly dismissed for two reasons.

*First*, a wrongful conclusion by a state actor that a person of faith is insincere infringes on the free exercise of religion. This infringement can be challenged in court by bringing a 1983 action. As long as the complaint properly alleges an honest religious belief, a motion to dismiss should not be granted. The reason is that a challenge to sincerity goes to the merits of the case and as such a motion under Rule 12(b)(6) comes as the wrong instrument to bring that contest. Whether a stated belief is sincerely held sits as a fact-sensitive matter and must go through the crucible of trial where this Circuit has determined that demeanor under direct and cross-examination is judged by the factfinder.

*Second*, the district court viewed the evaluation of O'Leary's sincerity as a lawful undertaking by an employer and thus there can be no infringement on the free exercise of religion. Although questioning the sincerity of O'Leary's faith is lawful, that inquiry still is by nature an individualized assessment. This is because reviewers looked at the particular reasons for the requested exemption. As an individualized assessment it was not a generally applicable law. Therefore, the assessment caused an incidental burden on O'Leary's exercise of his faith.

## STATEMENT OF FACTS

### A. O'Leary's sincerely held religious beliefs

Matthew O'Leary was raised as a devout Roman Catholic with a deep and sincere belief that human life is a sacred gift from God. A 25–26. He has clung to that religious belief to this day. A 25–26. After attending public school through grade six, O'Leary attended Catholic secondary schools and matriculated at St. John's University, a Catholic university in New York. A 25. He has frequently assisted with tutoring students and helping to prepare meals for the homeless. His religious upbringing and education has instilled in him the value and sacredness of every human life. *Id*.

O'Leary believes that the unborn child is a gift from God. *Id*. He opposes any medical treatment in any way connected to aborted fetal cells. Since he believes that aborted fetal cell lines were used in the research, testing, or development of all three COVID-19 vaccines (Johnson & Johnson, Moderna, and Pfizer/BioNTech), O'Leary is unable to receive any of the vaccines due to religious convictions. *Id*. To receive a COVID-19 vaccine would be a sinful act for O'Leary and cost him his relationship with God. Doing so would prevent him from an eternal afterlife in the presence of God. A 26.

O'Leary takes a particularly strong stance against the vaccines' connection to aborted fetal cell lines. A 35. He believes that the purposeful ending of a human

life is an act of murder. *Id*. He considers the use of aborted fetal tissue in the research, development, or production of the vaccines to be a furtherance of child sacrifice and sorcery. *Id*.

O'Leary's views on the purposeful ending of a human life are taken from several scriptures in the Bible. 2 Kings 17:17 states that "they caused their sons and daughters to pass through the fire, practiced witchcraft . . . and sold themselves to do evil in the sight of the Lord." *Id*. Similarly, 2 Chronicles 33:6 states that "he caused his sons to pass through the fire . . . used witchcraft and sorcery . . . did much evil in the sight of the Lord, to provoke Him to anger." A 35–36. Revelation 18:23 reveals that "your merchants were the great men of the earth, for by your sorcery all the nations were deceived."

In addition, 1 Corinthians 10:20 teaches that "the things which the Gentiles sacrifice they sacrifice to demons and not to God, and I do not want you to have fellowship with demons." *Id*. Galatians 5:19-21 also teaches that "the works of the flesh are evident, which are . . . idolatry, sorcery . . . murders . . . and the like . . . those who practice such things will not inherit the kingdom of God." *Id*.

Not able to overlook these religious texts, O'Leary could not in good conscience undergo vaccination. His religious convictions are so integral to his life that he made the costly decision to lose his employment rather than deny his faith. A 38.

### B. O'Leary's religious accommodation request

O'Leary was employed by the City of New York's Department of Investigation on or about July 2017 as a Special Investigator/E-Discovery Manager ("E-Discovery Manager") within the Law Enforcement Technology, Digital Forensic Unit. A 29. Beginning approximately March 2020 through May 2021, O'Leary performed his job duties as an E-Discovery Manager for NYC remotely.

On October 20, 2021, the NYC Department of Health implemented a mandatory COVID-19 vaccination policy ("Vaccine Mandate"). Pursuant to the Vaccine Mandate, NYC employees were required to receive the first dose of a COVID-19 vaccine by October 29, 2021. A 44. Employees could submit a request for an accommodation from the Vaccine Mandate by October 27, 2021. *Id*. If NYC denied the request and the employee remained unvaccinated, the employee would be placed on leave of absence without pay status. *Id*.

O'Leary submitted his request for an accommodation to the Department of Investigation on October 25, 2021. A 21–25. He explained in detail the conflict between his religious beliefs and receiving a COVID-19 vaccine. A 25–26. The Department of Investigation contacted O'Leary on October 28, 2021, to schedule a fifteen-minute conference call. O'Leary attended the call where he was questioned about his religious beliefs by an Equal Employment Officer and Human Resources Director. These questions were as follows:

- Please describe the nature of your objection to the Covid-19 vaccination requirement.
- Do you belong to an organized religion? If yes, which religion?
- How long have you subscribed to this faith?
- Do you have a place of worship? If yes, where? If yes, what is the extent of your participation?
- Do you have a worship or religious leader? If so, who?
- Are there any other medicines or products that you do not use because of the religious belief underlying your objection?
- Embryonic tissues were used in research, how do you handle Tylenol/advil that were developed in the same way? Why does your religious belief prohibit vaccine? [sic]

A 31–34.

On November 18, 2024, officials from the Department of Investigation notified O'Leary by a memorandum that his accommodation request was denied "because it is not based on a sincerely held religious, moral or ethical belief." A 27.

On November 21, 2021, O'Leary appealed NYC's denial of his request for an accommodation with the NYC Reasonable Accommodation Appeals Panel. A 29–38. On December 20, 2021, the Appeals Panel notified O'Leary that the appeal was denied stating that O'Leary "Does Not Meet Criteria" to receive a religious accommodation from the Vaccine Mandate. A 39. O'Leary was given three business days from the date of the denial of O'Leary's appeal to submit proof of the first dose of a COVID-19 vaccine in order to continue working. O'Leary, however, could not and did not receive any COVID-19 vaccine due to his sincerely

8

held religious beliefs. NYC subsequently placed O'Leary on leave without pay status beginning December 24, 2021. A 50. O'Leary was terminated from his position on February 11, 2022. *Id*.

NYC offered O'Leary full reinstatement of his position at the Department of Investigation as an E-Discovery Manager on June 17, 2022. A 40. Although NYC was on notice of O'Leary's religious beliefs which conflicted with receiving any COVID-19 vaccine, the Reinstatement Offer by NYC/DOI to O'Leary nevertheless required him to produce evidence of the first dose of a COVID-19 vaccine by June 30, 2022. *Id*. Holding fast to his religious convictions, O'Leary declined once more to take the vaccines.

## ARGUMENT

### I.  STANDARD OF REVIEW IS *DE NOVO*.

This Court "review[s] de novo a District Court's dismissal of a complaint pursuant to Rule 12(b)(6)." *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 94 (2d Cir. 2017). When ruling on a defendant's motion to dismiss a complaint, the district court "must accept as true all of the factual allegations contained in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). On appeal, the Court will review the facts, "drawing all reasonable inferences in the plaintiff's favor, and construing any ambiguities in the light most favorable to upholding the plaintiff's claim." *Sung Cho v. City of New York*, 910

F.3d 639, 642 n.1 (2d Cir. 2018). In addition, a complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated by reference." *International Audiotext Network v. American Tel. & Tel. Co.*, 62 F.3d 69 (2d Cir. 1995).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## II. THE AMENDED COMPLAINT STATED SUFFICIENT FACTS TO STATE A CLAIM FOR A VIOLATION OF THE FREE EXERCISE OF RELIGION.

A party states a claim under Section 1983 when, under color of law, a state actor violates a constitutional right. *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing 42 U.S.C. § 1983). Those elements are present here. First, there is no dispute that NYC acted under color of law. What is in dispute is whether O'Leary's rights to the free exercise of religion were infringed. The basis for O'Leary's claim is two-fold. First, the reviewer of O'Leary's request for a religious exemption wrongly imputed insincerity and thereby infringed on O'Leary's free exercise of religion. Second, there was a mechanism for

10

individualized assessment which fell short of general applicability. These will be addressed in that order.[2]

### A. A state actor's determination of insincerity of religious belief can be challenged via a 1983 claim.

The district court ruled that employers in "an exemption process" may legitimately enter into an inquiry about the sincerity of a religious adherent's beliefs "without running afoul of the First Amendment." A 173. By way of example, the district court asserted that an employer "may legitimately include questions about the use of other medications derived from fetal cell lines," or "acts outside the COVID-19 context" which align or fail to align with the employee's beliefs. *Id*. (quoting *Chinchilla v. New York City Police Dep't*, 2024 U.S. Dist. LEXIS 123248 at *12 (S.D.N.Y. July 12, 2024), and *Kane v. De Blasio*, 575 F. Supp. 3d 435, 442 (S.D.N.Y. 2021)). The lower court dismissed the free exercise claim reasoning that, because those questions can be asked by an employer, it follows that there was no violation of O'Leary's free exercise of religion. This is error. Whether or not such questions may be asked is not dispositive of the free exercise claim.

---

[2] Although Article III standing is not an issue, O'Leary notes that the violation of his free exercise rights is itself an injury. *Agudath Isr. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020) (citing *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976)). Further, said violation caused a loss of employment and income. Thus, there is injury in fact under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

The issue in this case on appeal is whether NYC's conduct infringed on O'Leary's free exercise of religion. O'Leary concedes that the law is clear that government officials are entitled "to assure themselves that there is ample predicate for invoking the Free Exercise Clause." *Frazee v. Ill. Dep't of Emp. Sec.*, 489 U.S. 829, 833 (1989). Because a government official may ask questions to probe sincerity, it does not follow that the State's decision is binding for all venues and at all times. After a citizen's faith has been tarred by the State as insincere, the courthouse doors are not closed. Just as the government can raise sincerity as an affirmative defense to a free exercise claim (*Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996)), there is no principled reason why the citizen cannot bring a free exercise claim challenging the state actor's determination as to sincerity, alleging that the decision is mistaken and thus an infringement on the free exercise of religion. *Burns v. Warwick Valley Cent. Sch. Dist.*, 166 F. Supp. 2d 881, 886-87 (S.D.N.Y. 2001). Indeed, the *Frazee* case came to the courts after state officials weighed an applicant's faith-based reasons for not working on Sunday and found them to be wanting. *Id.*

If the allegations in a complaint assert that (1) the plaintiff holds a given religious belief, (2) that belief is sincere, (3) a state actor has deemed the belief insincere, (4) resulting in an infringement on religious exercise, then a cause of action has been sufficiently stated. It is error to dismiss a complaint under Rule

12(b)(6) where facts supporting those elements are set forth in a free exercise of religion claim. *Velez v. Collado*, No. 9:22-CV-0362 (AMN/ML), 2023 U.S. Dist. LEXIS 93993 (N.D.N.Y. May 30, 2023) (citing *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999)). "At the motion to dismiss stage, a complaint must assert sufficient allegations necessary to establish that plaintiff's claim is based upon a sincerely held religious belief." *Lopez v. Cipolini*, 136 F. Supp. 3d 570 (S.D.N.Y. 2015) (citing *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003)). In the Amended Complaint, O'Leary has alleged that his religious beliefs regarding vaccination are sincere (A 45–47) and has provided as an exhibit his detailed explanation of those beliefs that were given to his employer (A 21–26). Because a challenge that beliefs are insincere goes to the merits of the case, such a challenge is improper at the pleading stage.

In that the Amended Complaint properly alleges that O'Leary was denied a religious exemption due to NYC's wrongful assertion that his faith is insincere, the pleadings state sufficient facts to support his free exercise of religion claim.

1. **The nature of a Free Exercise Clause claim requires confining a review to the fact-sensitive inquiry of sincerity.**

Sincerity of religious belief is a fact-sensitive issue (*Ware v. Valley Stream High Sch. Dist.*, 75 N.Y.2d 114, 124 (1989)) for which a determination is rarely appropriate under summary judgment and not the proper subject of challenge via a

motion to dismiss. *Mozert v. Hawkins Cty. Pub. Sch.*, 765 F.2d 75, 78 (6th Cir. 1985).

Sincerity analysis "provides a rational means of differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud," and requires a factfinder "to delve into the claimant's most veiled motivations." *Patrick v. Le Fevre*, 745 F.2d 153, 157 (2d Cir. 1984). Hence, sincerity is tested by a factfinder—whether a jury or the bench. This Circuit has explained that assessing sincerity "demands a full exposition of facts and the opportunity for the fact finder to observe the claimant's demeanor during direct and cross-examination." *Id.* Thus, a motion to dismiss is an ill-suited instrument for a full exposition of facts.

This Circuit is not alone. Several circuits consider the issue of sincerity of religious faith as a question of fact. "Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions. . . . [which] should be reserved for the factfinder at trial, not for the court at summary judgment." *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) (internal quotation marks omitted). The Fifth Circuit's position is that "[t]he sincerity of a person's religious belief is a question of fact unique to each case." *Davis v. Fort Bend County*, 765 F.3d 480, 485-86 (5th Cir. 2014). Consistent with both the First and Fifth Circuits, the

14

Eleventh Circuit has held that the question of whether plaintiffs were "sincere, committed Christians" was "a matter for the jury, not the court." *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 855 (11th Cir. 2010).

Here NYC made a determination of O'Leary's sincerity by a short telephonic interview. A 29. If due to First Amendment concerns a judicial factfinder must look to demeanor to determine sincerity (*Patrick*, 745 F.2d at 158), there is no basis for a government employer to do less. This is required to maintain the state's fidelity to the Constitution. It does not matter that this method of evaluating the sincerity rests with the courts or any other state actor. The obligations that the First Amendment requires stand as equally applicable to all state actors.

In a contest over the allegations in a complaint relative to a free exercise claim, concerns that a plaintiff's beliefs are insincere or disingenuous is in fact an attack on the merits, rather than the sufficiency of the pleadings. Therefore, sincerity rests as an evidentiary inquiry rather than a test of the pleadings. *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1012 (7th Cir. 2024). Accordingly, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232,

15

236 (1974)). Because O'Leary has pled with sufficient specificity on his free exercise claim, the lower court erred in dismissing the Amended Complaint.

In a free exercise case, the Supreme Court cautions against second-guessing the reasonableness of an individual's assertion that a requirement burdens religious beliefs. The court's "narrow function . . . is to determine whether the line drawn reflects an honest conviction." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (quoting *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 716 (1981) (inner quotes removed)). *Bolden-Hardge v. Office of the Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023). Limiting the review of religious beliefs to sincerity is not cabined to the courts. It has also been applied to other government entities. *Hernandez v. Commissioner*, 490 U.S. 680, 693 (1989) ("the IRS can reject otherwise valid claims of religious benefit only on the ground that a taxpayers' alleged beliefs are not sincerely held").

Long ago, the Supreme Court held that "the law knows no heresy" (*Watson v. Jones*, 13 Wall. 679, 728 (1872)) and thus "[h]eresy trials are foreign to our Constitution. Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs." *United States v. Ballard*, 322 U.S. 78, 86 (1944). More recently the Supreme Court affirmed that "[i]t hardly requires restating that government has no role in deciding or even suggesting whether the religious ground for [a] conscience-based objection is legitimate or

illegitimate." *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U.S. 617, 639 (2018). To the nonadherent, a religious conviction may come across as illogical, incomprehensible, or inconsistent. Nonetheless, a belief sincerely held rests as fully protected under the First Amendment. *Thomas*, 450 U.S. at 714.

O'Leary's theory of the case is that NYC officials violated his rights to the free exercise of religion by wrongly attributing insincerity to his beliefs regarding vaccination. NYC's ability to second guess O'Leary's faith is suspect because religious experiences "which are as real as life to some may be incomprehensible to others." *Ballard*, 322 U.S. at 87.

By its nature, an evaluation of sincerity of religious faith entails an individualized review. O'Leary's position is that this not only points to the issue of whether the evaluation was generally applicable (discussed in the next section), but also to a direct infringement on the free exercise of religion. Whereas general applicability examines a regulation and the process of evaluation, the lawsuit challenges the decision itself as a First Amendment violation. Thus, the legal theory of the case is that the determination by a state actor of insincerity was wrong and violated O'Leary's free exercise rights. In light of this, a claim for a First Amendment violation was stated and the case should proceed to discovery and trial.

**B. The process for evaluating O'Leary's sincerity constituted a mechanism for individualized review and thus was not generally applicable.**

There is a second way that NYC violated O'Leary's free exercise rights. O'Leary alleges that the denial of the religious exemption to the Vaccine Mandate violated his First Amendment rights because the requirement was not an incidental burden on his free exercise of religion, but rather a substantial burden.

An initial inquiry must be made as to whether the mandate was neutral or generally applicable. *Emp't Div. v. Smith*, 494 U.S. 872 (1990). O'Leary asserts that the mandate was not generally applicable. A law that is not generally applicable "must undergo the most rigorous of scrutiny." *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993).

This Court described the two tests for general applicability as follows:

a law may not be "generally applicable" under *Smith* for either of two reasons: **first**, if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions; or, **second**, if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.

*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 284 (2d Cir. 2021) (citing *Fulton v. City of Phila.*, 593 U.S. 522, 533 (2021)) (Emphasis added and cleaned up).

This Court's articulation of the two ways that a law can fail general applicability provides clear markers for review. However, beyond setting forth the

18

proper analysis, *We the Patriots* is of limited value to the case at hand because the second test relative to permitting secular conduct while prohibiting comparable religious conduct was the focus of *We the Patriots*. Not so here. The district court's reliance on *We the Patriots* aimed at the wrong target because O'Leary is shooting for the first test involving a mechanism for individualized review.

In like manner, the district court's reliance on *Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021) (A 168), lands off the mark. In a challenge to a vaccination mandate issued by the Department of Education, this Circuit found in *Kane* that the requirement applied to an entire class and thus constituted a regulation of general applicability. *Kane*, 19 F.4th at 166.

Unlike *Kane*, O'Leary does not assert in the Amended Complaint that the Vaccine Mandate treats secular conduct more favorably than his own. *Id.* at 165. Moreover, in contrast to *We the Patriots* O'Leary does not allege that the Vaccine Mandate falls short of general applicability for failing to apply to certain categories of persons or proper comparators. *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). Again, the district court is looking at the wrong test.

Turning to the right test, NYC's process for religious exemption was not generally applicable because the individualized assessment of O'Leary's request centered on an evaluation to determine if his beliefs were sincere. Consider the language in the Amended Complaint. The initial reviewers "in denying Plaintiff's

19

request to be exempted from compliance with the Vax Mandate, concluded that Plaintiff failed to demonstrate evidence of a sincerely held religious belief that conflicted with receiving any COVID-19 vaccine(s)." A 62 at ¶ 147. Further, "[t]he Appeals Panel in determining that Plaintiff's religious beliefs were not sincere . . . has passed judgment and presupposed the illegitimacy of Plaintiff's religious beliefs and practices which is in violation of the Free Exercise Clause." A 65 at ¶ 163.

When the government puts in place a regulatory process which includes a mechanism for individualized assessments, the process is not generally applicable. *Fulton v. City of Phila.*, 593 U.S. at 533. In other words, a law is not generally applicable if it "invite[s]" the government to consider the particular reasons for a person's conduct by providing "'a mechanism for individualized exemptions.'" *Emp't Div. v. Smith*, 494 U.S. at 884 (quoting *Bowen v. Roy*, 476 U.S. 693, 708 (1986) (opinion of Burger, C. J., joined by Powell and Rehnquist, JJ.)).

Although the mere provision of a religious exemption does not itself trigger strict scrutiny (*Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015)), what *does* trigger strict scrutiny is when a policy of individualized, discretionary exemptions is in place allowing government officials to unilaterally evaluate "the particular reasons for a person's conduct." *Fulton*, 593 U.S. at 533. Stated

20

elsewise, a policy is not generally applicable when the government "considers the particular reasons underlying the applicant's religious beliefs and provided 'individualized exemptions' to applicants whose religious beliefs, in [its] discretion, justified an exemption." *Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1273 (10th Cir. 2024). The very nature of evaluating whether O'Leary is sincere or insincere falls outside of general applicability. This is not to say that a government employer cannot ask these questions, but rather whether the process the government uses is generally applicable. By answering that question, a court can determine the standard of review of the government's actions, i.e., rational basis or strict scrutiny review. *Lukumi*, 508 U.S. at 531.

## CONCLUSION

The Amended Complaint alleges that NYC wrongfully concluded that O'Leary's stated reasons for not undergoing vaccination were insincere. This erroneous decision resulted in an infringement of the exercise of his religion, resulting in the loss of his livelihood. The district court's dismissal of his First Amendment claim was in error because sincerity is a fact-sensitive issue that must be tested by trial.

Additionally, undertaking an evaluation of O'Leary's faith of necessity required an individualized assessment to determine the particular reasons for the request for a religious exemption. The district court thus also committed reversible

error by finding that the review for sincerity was a generally applicable regulation requiring mere rational basis review.

Taken together as true, the allegations in the Amended Complaint state sufficient facts to establish violations of the First Amendment. Thus, O'Leary requests reversal of the lower court's decision to dismiss the case.

Dated: November 27, 2024

/s/ Kevin T. Snider
Kevin T. Snider
Emily C. Mimnaugh
Lorna M. Henry
*Attorneys for Plaintiff-Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that pursuant to Fed. R. App. P 32(a)(7)(C) and Second Circuit Rule 32-1, the attached opening brief is proportionately spaced, has a typeface of 14 points or more, the font is Times New Roman, and contains no more than 14,000 words. According to Microsoft Word's "Statistics" this document contains: 6022

/s/ Kevin T. Snider
Kevin T. Snider

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: November 29, 2024

/s/ Kevin T. Snider
Kevin T. Snider