# 24-2710

## United States Court of Appeals
## for the Second Circuit

MATTHEW O'LEARY,

*Plaintiff-Appellant,*

*against*

CITY OF NEW YORK,

*Defendant-Appellee.*

THE NEW YORK CITY DEPARTMENT OF INVESTIGATION,

*Defendant.*

On Appeal from the United States District Court
for the Southern District of New York

## BRIEF FOR APPELLEE

RICHARD DEARING
JAMISON DAVIES
LAUREN L. O'BRIEN
*of Counsel*

January 6, 2025

MURIEL GOODE-TRUFANT
*Corporation Counsel*
*of the City of New York*
Attorney for Appellee
100 Church Street
New York, New York 10007
212-356-0852
lobrien@law.nyc.gov

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................ii

PRELIMINARY STATEMENT..........................................................1

ISSUES PRESENTED.......................................................................2

STATEMENT OF THE CASE............................................................3

    A. The City of New York's requirement that City employees
    be vaccinated against COVID-19.......................................3

    B. The City's denial of O'Leary's request for a religious
    accommodation from the vaccine requirement ................5

    C. The district court's dismissal of this action .......................7

SUMMARY OF ARGUMENT............................................................9

ARGUMENT....................................................................................12

    THE DISTRICT COURT PROPERLY DISMISSED
    O'LEARY'S FREE EXERCISE CLAIM ..................................12

    A. O'Leary failed to state a claim under § 1983. ..................13

        1. O'Leary's conclusory allegation that the agency's
        determination was incorrect is insufficient to state a
        Free Exercise claim. ....................................................13

        2. In any event, O'Leary's § 1983 claim against the City
        fails because he failed to tie it to any municipal policy
        or custom. ....................................................................18

    B. The mere existence of a process for religious exemptions
    does not trigger strict scrutiny.........................................20

CONCLUSION................................................................................23

CERTIFICATE OF COMPLIANCE ................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*,
    425 F.3d 126 (2d Cir. 2005) ............................................................ 19

*Matter of Bryan v. Bd. of Educ.*,
    222 A.D.3d 473 (1st Dep't 2023) .................................................... 15

*Cent. Rabbinical Cong. v. NYC DOHMH*,
    763 F.3d 183 (2d Cir. 2014) ............................................................ 20

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) .............................................................. 9

*City of Canton v. Harris*,
    489 U.S. 378 (1989) ......................................................................... 19

*Clementine Co., LLC v. Adams*,
    74 F.4th 77 (2d Cir. 2023) ................................................................. 3

*Does 1-2 v. Hochul*,
    2024 U.S. App. LEXIS 32305 (2d Cir. Dec. 20, 2024) .................. 18

*Matter of Ferrelli v. State of N.Y.*,
    226 A.D.3d 504 (1st Dep't 2024) .............................................. 14, 15

*Frazee v. Ill. Dep't of Employment Sec.*,
    489 U.S. 829 (1989) ......................................................................... 13

*Fulton v. City of Philadelphia*,
    593 U.S. 522 (2021) (App. Br. 20) .................................................. 21

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009) ................................................................ 9

*Matter of Hogue v. Bd. of Educ.*,
    220 A.D.3d 416 (1st Dep't 2023) .................................................... 15

*Kane v. De Blasio (Kane I)*,
    19 F.4th 152 (2d Cir. 2021) ................................................... 8, 12, 22

*Kimble v. Kingston City Sch. Dist.*,
    792 Fed. App'x 80 (2d Cir. 2019) .................................................... 19

*Matter of Lee v. City of N.Y.*,
    221 A.D.3d 505 (1st Dep't 2023) .................................................... 15

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Monell v. Department of Soc. Servs.*,
  436 U.S. 658 (1977)......................................................................... 18

*New Yorkers for Religious Liberty, Inc. v. City of New York (Kane II)*,
  121 F.4th 448 (2d Cir. 2024) .....................................................*passim*

*Patrick v. Le Fevre*,
  745 F.2d 153 (2d Cir. 1984) ............................................................ 16

*We the Patriots USA, Inc. v. Hochul*,
  17 F.4th 266 (2d Cir. 2021) ....................................................... 3, 20

## PRELIMINARY STATEMENT

After plaintiff Matthew O'Leary refused to comply with the requirement that all New York City employees be vaccinated against COVID-19 in the face of the rising incidence of highly transmittable variants of the disease, he was terminated from his employment with a City agency. Disregarding the City's subsequent conditional offer of reinstatement, O'Leary brought this action challenging the City's denial of his individual request for a religious exemption from the vaccine requirement under the First Amendment's Free Exercise Clause, among other claims. The Southern District of New York (Buchwald, J.) rejected the allegations in support of his constitutional claim as conclusory and dismissed his complaint.

This Court should affirm. O'Leary's arguments are foreclosed either by this Court's precedent or by O'Leary's own admissions. As this Court recently explained, the City's inquiry into the sincerity of O'Leary's professed religious objection to vaccination was appropriate, *see New Yorkers for Religious Liberty, Inc. v. City of New York (Kane II)*, 121 F.4th 448, 462 (2d Cir. 2024), and his threadbare responses to the agency's requests for further information support its stated rationale for denying the exemption. O'Leary abandons the argument raised in his papers below that the City had an impermissible motive for denying his

request, and the only allegation he points to on appeal—his bare assertion that his professed religious objection is sincere—is not enough to overcome rational basis review. In any event, O'Leary's claim fails for the independent reason that he does not allege that any policy or custom caused a constitutional injury, as required to impose municipal liability under § 1983.

This Court also squarely rejected O'Leary's second argument that the mere existence of a review process for religious exemptions triggers strict scrutiny. As the utter lack of authority for his argument reflects, it makes no sense to suggest that providing for religious accommodations in an otherwise constitutional public health measure somehow renders the accommodation process suspect under the Free Exercise Clause. More fundamentally, O'Leary presented no evidence that the City's process for reviewing his accommodation request was infected with religious animus.

## ISSUES PRESENTED

Did the district court providently dismiss O'Leary's First Amendment claim where he advanced only conclusory allegations that the agency's determination was incorrect, failed to plead the necessary elements of a municipal liability claim, and otherwise advances a claim foreclosed by this Court's precedent?

## STATEMENT OF THE CASE

### A. The City of New York's requirement that City employees be vaccinated against COVID-19

COVID-19 is a highly infectious and potentially deadly disease that "has caused widespread suffering in the State, country, and world." *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 272 (2d Cir. 2021). Few places were hit as hard as New York City, where COVID-19 and its highly transmittable variants caused over 2.2 million cases and 39,000 deaths.[1]

Vaccines are the leading public health prevention strategy to combat the COVID-19 pandemic.[2] *See Clementine Co., LLC v. Adams*, 74 F.4th 77, 88 (2d Cir. 2023) (noting vaccination is "the most effective tool to mitigate the spread of COVID-19 and protect against severe illness" (quoting Exec. Order No. 225)). Shortly after a vaccine for people aged 16 or older received full regulatory approval, the Commissioner of the New York City Department of Health and Mental Hygiene required all New York City employees to receive at least one dose of vaccination by October 29, 2021 (Joint Appendix ("JA") 44).

---

[1] N.Y. Times, *Tracking Coronavirus in New York City, N.Y.* (captured Feb. 17, 2022), https://perma.cc/W2ZE-Q72M.

[2] CDC, *Guidance for COVID-19 Prevention in K-12 Schools* (captured Feb. 18, 2022), https://perma.cc/2ZHV-B9VU.

At the same time, vaccine hesitancy reached an all-time high.[3] At least in significant part, that was attributable to the spread of misinformation online, and an attendant decline in trust of expertise and authority.[4] Misconceptions about fetal cell lines took social media by storm. For example, the two major vaccines at the time, Pfizer and Moderna, neither used for production nor contained aborted fetal cell lines—rather, as with most modern-day vaccines and medications, including a vast array of over-the-counter medications, those vaccines used the two cell lines only in the initial testing of the vaccine.[5]

Against this backdrop, City agencies were flooded with requests for exemptions from the vaccination requirement. To handle the unprecedented crush of requests for accommodations citywide, the City established additional procedures, including a process for appealing

---

[3] Heidi J. Larson et al., *The Vaccine-Hesitant Moment*, New England Journal of Medicine (July 29, 2022), *available at* https://www.nejm.org/doi/pdf/10.1056/NEJMra2106441?articleTools=true.
[4] *Id.*
[5] Priyanka Runwal, *Here are the facts about fetal cell lines and COVID-19 vaccines*, National Geographic (Nov. 19, 2021*), available at* https://perma.cc/9XE9-63CP (captured Apr. 29, 2024); *see also* Diane Juffras, *An In-Depth Look at Religious Exemption from COVID-19 Vaccine Mandates*, UNC School of Government (Oct. 8, 2021), *available at* https://perma.cc/UY28-8SJW (captured Apr. 29, 2024).

4

denials of accommodation to the City of New York Reasonable Accommodation Panel ("the Citywide Panel") (JA63).

### B. The City's denial of O'Leary's request for a religious accommodation from the vaccine requirement

On October 25, 2021, O'Leary submitted a Reasonable Accommodation Request Form seeking a religious exemption from the COVID-19 vaccine requirement (JA21-24). He attached a single letter to his request form stating that he was raised Roman Catholic and "sincerely believe[s] that a human life is a sacred gift from God," including "our immunity and immune system" (JA25). He further asserted that he objected to the use of fetal cell lines in the development of the COVID-19 vaccines and that he could not "take a vaccine that was developed, tested or produced using fetal cell tissue" (*id.*).

After receiving his initial application, the Department of Investigation's Equal Employment Opportunity (EEO) Office sought further information about O'Leary's religious accommodation request in a telephone meeting (JA47). EEO officials requested additional information about the nature of his objection to the vaccine requirement, the extent of his involvement in organized religion, and any history of refusing other medicines or products, including common over-the-counter

medications, for the reasons he identified in his initial exemption request (*see* JA31-34). The EEO Office then denied his request based on its conclusion that his objection to vaccination was "not based on a sincerely held religious, moral, or ethical belief" (A27).

On appeal to the Citywide Panel, O'Leary insisted that the agency should not have questioned the sincerity of his objection (JA29-31), reiterated the assertions made in his initial exemption request, and provided further explanations for his responses to the EEO Office's questions during their meeting (JA29-35). In particular, in response to the agency's request that he identify other medicines or products that he avoids for the same reason that he objects to the COVID-19 vaccine, he stated broadly that "[t]here are many medicines that change our body's response to infection and symptoms, which I have not and would not feel comfortable taking" (JA34), and expressed his belief that "in general we must also ensure that our bodies are supplied with adequate water, vitamins and minerals when sick" (JA34).

But he failed to point to any particular instance in which he had refused medication. Rather than directly respond to the agency's question about how he handles common over-the-counter medication, like Tylenol and Advil, that were developed in the same way as the objected-

to vaccine, he instead merely noted his objections to the manner in which the EEO officers documented the question in their notes (JA34).

The Citywide Panel denied O'Leary's appeal (JA39), and he was placed on leave without pay and then terminated in February 2022 (JA50). In July 2022, the Department of Investigation offered him full reinstatement to his former position should he become fully vaccinated against COVID-19 by August (JA40), but O'Leary never responded to the agency's offer or supplemented his previous religious accommodation request (JA51-52).

### C. The district court's dismissal of this action

O'Leary brought this action a year later, seeking damages and a declaration that the City violated Title VII of the Civil Rights Act of 1964 and the Free Exercise Clause of the First Amendment when it denied him an accommodation (JA1-16). By the time O'Leary brought this action, the City had lifted the vaccine mandate,[6] but at no point prior to or during the course of this litigation has O'Leary sought reinstatement.

The district court granted the City's motion to dismiss the complaint (A174). First, the court found that O'Leary's termination and

---

[6] *With Over 96 Percent of City Workers Fully Vaccinated, Major Adams Announces Covid-10 Vaccination Will Become Optional for City Workers*, Feb. 6, 2023, available at https://perma.cc/X4LY-WPDG (captured Jan. 9, 2024).

failure to accommodate claims under Title VII failed at the threshold because he had not exhausted them by filing a timely EEO charge (JA161-62). It dismissed O'Leary's surviving Title VII claim, which was based on the City's July 2022 offer of reinstatement, because that offer did not constitute a materially adverse change in his employment, and he in any event had not sought an accommodation in connection with the reinstatement offer that could form the basis of a failure to accommodate claim (A164-66).

The court then concluded that O'Leary's as-applied challenge under the Free Exercise Clause was unavailing because the vaccine mandate had been applied neutrally and was generally applicable (JA166-74). The court explained that the City had engaged in "a perfectly permissible inquiry" into the sincerity of O'Leary's beliefs before denying his exemption request (JA170). It rejected his argument in response—that the City denied his request solely because he had failed to provide an authoritative letter from a religious official—as "presuppose[ing] a level of studied ignorance or defiance" of this Court's teachings in *Kane v. De Blasio (Kane I)*, 19 F.4th 152 (2d Cir. 2021) ("exceedingly narrow" holding that denying accommodation based solely on "someone else's publicly expressed religious views" is constitutionally suspect) (JA171). His claim also failed for the "[m]ore fundamental[]" reason that his

complaint "at most offers conclusory statements regarding defendant's discriminatory motivation," and thus fails to establish that the vaccine requirement was not applied neutrally (JA171).

The court then also rejected O'Leary's argument that the religious exemption process itself rendered the otherwise-lawful vaccine requirement constitutionally suspect, pointing to this Court's precedent foreclosing that argument (JA172-73). Finding his free exercise claim subject to rational basis review, the court concluded the standard had "plainly been met here" (JA174).

## SUMMARY OF ARGUMENT

This Court reviews the district court's decision de novo, accepting all well-pled factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). But "that tenet is inapplicable to legal conclusions," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (cleaned up).[7]

---

[7] This brief uses "(cleaned up)" to indicate that internal quotation marks, alterations, and citations have been omitted from quotations.

This court should affirm the district court's dismissal of O'Leary's First Amendment claim.[8] The agency engaged in an appropriate inquiry into the sincerity of O'Leary's proffered religious basis for objecting to vaccination, including in a back-and-forth discussion with O'Leary in which he was given the opportunity to provide further details about the conflict between his religious practice and the vaccine requirement and address prior medication refusals. O'Leary's responses, including his failure to identify any other instance in which he refused vaccines or medication for the reasons provided in his request, justify the agency's conclusion that he had failed to provide a sincere religious basis for his objection to vaccination.

On appeal, O'Leary abandons the only argument he made below that the City applied an improper standard, concedes that the agency did not have a discriminatory motive, and otherwise points to no factual allegations or indicia of sincerity in his submissions that could support the conclusion that the City was mistaken. His mere disagreement with the agency's factual determination is insufficient to state a constitutional claim.

---

[8] O'Leary's complaint also contained claims under Title VII of the Civil Rights Act of Act of 1964, but he abandons those claims on appeal (App. Br. 2 n.1).

O'Leary's shifting theory on appeal also highlights an independent reason to dismiss his claim. As noted above, O'Leary abandons the argument raised in his papers below that the City denied his request based solely on his lack of religious documentation, and on appeal, he points to nothing that could conceivably be considered a policy or custom as required to state a claim against the City under § 1983.

O'Leary's alternative argument—that the existence of a process for individual religious exemptions renders a public health measure subject to strict scrutiny—is foreclosed by this Court's precedent. Particularly where he advances no argument that the agency favored secularly motivated conduct over religiously motivated conduct in reviewing exemption requests, and where he specifically alleged that other religious exemptions were granted, his argument that the availability of a religious exemption triggers heightened scrutiny over the agency's individual determinations defies logic.

## ARGUMENT

### THE DISTRICT COURT PROPERLY DISMISSED O'LEARY'S FREE EXERCISE CLAIM

The Free Exercise Clause protects "an individual's private right to religious belief, as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion." *Kane I*, 19 F.4th 152, 163-64 (2d Cir. 2021) (cleaned up). But this protection "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability," and such laws are subject only to rational-basis review. *Id.* at 164 (quoting *Employment Div. v. Smith*, 494 U.S. 872, 879 (1990)).

This Court squarely held that the "City's Vaccine Mandate, in all its iterations, was neutral, generally applicable, and facially constitutional under the Free Exercise Clause" *New Yorkers for Religious Liberty, Inc. v. City of New York (Kane II)*, 121 F.4th 448, 459 (2d Cir. 2024) (cleaned up). It also held that the vaccine requirement's exemption policy "did not treat secular conduct more favorably than comparable religious conduct." *Id.* at 454. O'Leary seeks to avoid those holdings by challenging only the denial of his individual request for a religious exemption from the vaccination requirement under the Free Exercise

12

Clause. But his as-applied claim is subject to rational basis review, and the agency's determination easily clears that low bar.

### A. O'Leary failed to state a claim under § 1983.

#### 1. O'Leary's conclusory allegation that the agency's determination was incorrect is insufficient to state a Free Exercise claim.

As a threshold matter, O'Leary now appears to concede that an agency may properly reject a religious objection based on its finding of insincerity (*see* Brief for Appellant ("App. Br.") 12). But, to the extent O'Leary continues to advance the argument made in his papers below that the agency's inquiry into the sincerity of his religious objection was constitutionally suspect (*see* App. Br. 16-17), he is incorrect. *Kane II*, 121 F.4th at 462 (while the Citywide Panel cannot "cast judgment on the nature of the religious objection raised" in an individual request, it is free to deny an accommodation when "it concluded a claimant was not personally devout in the belief underlying the objection"); *see also id.* (Citywide Panel "engage[s] in the appropriate task" when it determines whether religious objection is "sincerely held"). The cases he cites only support the appropriateness of the agency's inquiry. (App. Br. 12, 16). *See, e.g.*, *Frazee v. Ill. Dep't of Employment Sec.*, 489 U.S. 829, 833 (1989) ("States are clearly entitled to assure themselves that there is an ample predicate for invoking the Free Exercise Clause.").

13

Applying the "low threshold" of rational basis review here, *Kane II*, 121 F.4th at 463, the district court correctly concluded that O'Leary failed to make out a constitutional claim.[9] EEO officials engaged O'Leary in an interactive discussion and sought additional details about O'Leary's religious practice and whether he had refused other medication or products in the past. Such requests for supplemental information are appropriately "geared towards developing a factual basis for reaching a conclusion as to whether any particular [applicant's] beliefs are sincerely held and religious in nature," and have been found "necessary to prevent unsubstantiated religious exemptions from swallowing and undermining the rule of the vaccination mandate itself." *Matter of Ferrelli v. State of N.Y.*, 226 A.D.3d 504, 506-07 (1st Dep't 2024) (cleaned up).

O'Leary's vague responses support the agency's conclusion that his request was not sincerely based in religion (JA31-34). Even on appeal to the Citywide Panel, when given the opportunity to further supplement his responses to the agency's specific questions, he either failed to

---

[9] Contrary to O'Leary's suggestion that district court missed a dispositive issue (App. Br. 11), the district court found both that rational basis review applies to his Free Exercise claim and that rational basis review is "plainly met here" (JA173-74), expressly rejecting the only fact-based theory he offered to support his argument that the agency's denial of his claim was based on an impermissible motive (JA171).

respond (JA34) or merely provided additional broad assertions about his general avoidance of medication (JA33-34). The lack of a demonstrated history of medicine or vaccine refusal has repeatedly been found to support the denial of a religious exemption,[10] and it supports the agency's denial here as well.

On appeal, O'Leary relies entirely on his bare assertions that his professed religious reasons for objecting to vaccination are sincere (App. Br. 11-12 (arguing allegation that a "belief is sincere" should save claim)). This new argument, based on a theory that the agency's determination was simply "mistaken" (App. Br. 12-17), was not preserved for review on appeal and this Court should reject it on that basis alone (*see* JA120-26). But even if this Court were to consider it, that unpreserved argument fails on the merits. Absent a "more-than-conclusory allegation" that the agency's finding "was erroneous or pretextual" in some way, his threadbare claim was properly dismissed on rational basis

---

[10] *See Matter of Ferrelli v. State of N.Y.*, 226 A.D.3d 504, 506-07 (1st Dep't 2024); *Matter of Bryan v. Bd. of Educ.*, 222 A.D.3d 473 (1st Dep't 2023); *Matter of Lee v. City of N.Y.*, 221 A.D.3d 505 (1st Dep't 2023); *Matter of Hogue v. Bd. of Educ.*, 220 A.D.3d 416 (1st Dep't 2023); *see also Compliance Manual on Religious Discrimination*, EEOC (Jan 15, 2021), available at https://perma.cc/V5WA-AVRW (captured Apr. 29, 2024), quoting *EEOC v. Union Independiente De La Autoridad De Acueductos*, 279 F.3d 49, 57 (1st Cir. 2002) ("[e]vidence tending to show that an employee acted in a manner inconsistent with his professed religious belief is, of course, relevant").

review. *Kane II*, 121 F.4th at 463 (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015)).

And the rest of the allegations in his complaint that either the agency or the Citywide Panel denied his request "under [a] guise" and "acted with hostility" toward his religious beliefs, (JA62, 64-65), are similarly "conclusions unsupported by facts" that "are insufficient to state a claim." *Kane II*, 121 F.4th at 461. The primary case he relies on for the proposition that the issue of sincerity cannot be resolved in a motion to dismiss only serves to highlight the deficiency of the pleadings here. *See Patrick v. Le Fevre*, 745 F.2d 153, 156 (2d Cir. 1984) (noting pro se plaintiff submitted a "voluminous" response pointing to "objective, as well as subjective, indicia that his beliefs … were sincerely held and religious in nature").

The only alternative explanation for the agency's denial of his exemption request offered in his papers below—that his request was denied because he did not provide "an authoritative letter from a religious organization" (JA125)—appears to have been abandoned on appeal (*see* App. Br. 11-17), and in any event is easily rejected. As the district court aptly put it, the suggestion that the agency based its denial on this single factor "presupposes a level of studied ignorance or defiance to *Kane*'s teachings" (JA171).

16

Rather than identify any specific allegations tending to support his claim, O'Leary repeatedly asserts that there is no categorical bar to a free exercise challenge of an employer's finding of insincerity (*see* App. Br. 11 ("A state actor's determination of insincerity of religious belief *can* be challenged via a [§] 1983 claim." (emphasis added); *id.* 12 ("[T]here is no principled reason why the citizen cannot bring a free exercise claim challenging the state actor's determination as to sincerity.")). That argument misses the mark. The City's position is not that such a challenge can *never* be brought, but rather that, applying "the low threshold of rational basis review" to his claim, O'Leary's conclusory allegations that the City's determination was erroneous do not "make out a constitutional claim for religious discrimination." *Kane II*, 121 F.4th at 463 (constitutional claim based on agency's finding cannot survive rational basis review without "a more-than-conclusory allegation" that finding "was erroneous or pretextual"). It bears repeating that, unlike the plaintiffs whose claims survived dismissal in *Kane II*, O'Leary no longer claims that the City relied on an improper basis, *id.* at 465, does not allege that it applied a constitutionally suspect standard, *id.* at 464, and does not allege that it disregarded his "longstanding objection to most medical treatments," *id.* at 463, or any other indicia of sincerity.

As he fails to advance any other theory whatsoever for why the denial of his individual request was "wrongful" (App. Br. 13), O'Leary seems to really be arguing that the mere fact that his request was denied based on a finding that his objection lacked a sincere basis in religion makes out a violation of his purported constitutional right to a religious accommodation. But employees have no constitutional right to a religious accommodation absent a sincerely held religious objection to vaccination. *See Kane II*, 121 F.4th at 462 (whether an applicant has a sincere belief is "subject to examination when an employment accommodation is sought").

2. **In any event, O'Leary's § 1983 claim against the City fails because he failed to tie it to any municipal policy or custom.**

O'Leary's shifting argument on appeal creates an additional problem: his claim as articulated in his brief is also barred under *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690-94 (1977). Because he abandons his Title VII claims (App. Br. 2 n.1), and his claim for declaratory relief is moot in light of the lifting of the vaccine mandate, *see Does 1-2 v. Hochul*, 2024 U.S. App. LEXIS 32305, at *5 (2d Cir. Dec. 20, 2024), O'Leary's only remaining claim is a § 1983 claim for damages against the City. To prevail on a claim under § 1983, O'Leary must show

18

not only a violation of his constitutional rights, but also "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

O'Leary failed to make that showing here. On appeal, he argues at most that his rights were violated because the City was "mistaken" in his individual case (App. Br. 12), not as the result of any alleged policy or custom of incorrectly finding religious accommodation requests insincere. This Court can dismiss his as-applied claim on that independent basis alone. *See City of Canton,* 489 U.S. at 385 (courts' "first inquiry in any case alleging municipal liability under § 1983" is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"); *Kimble v. Kingston City Sch. Dist.*, 792 Fed. App'x 80, 81 (2d Cir. 2019) (dismissing First Amendment claim where plaintiff failed to plead municipal policy or custom caused injury).

Though the City did not specifically raise this argument below, whether O'Leary alleged that the City had such a policy or custom is a "pure issue of law," and no unresolved issues of fact prevent the Court from reaching the issue on appeal. *Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, 425 F.3d 126, 136 (2d Cir. 2005). The City's failure to raise the issue earlier was reasonable because the issue only became relevant

19

on appeal, after O'Leary abandoned both his Title VII claims and the only attempt he made below to tie the City's denial of his exemption request to anything approaching a municipal "policy" (*see* JA13 (argument, abandoned on appeal, that City denied request based on failure to produce authoritative letter from religious organization)).

### B. The mere existence of a process for religious exemptions does not trigger strict scrutiny.

O'Leary next tries to recast the vaccination requirement for City employees as not generally applicable merely because it allows for religious accommodations (App. Br. 18-21). But this Court was explicit: "The mere existence of an exemption procedure, absent any showing that secularly motivated conduct could be impermissibly favored over religiously motivated conduct, is not enough to render a law not generally applicable and subject to strict scrutiny." *We the Patriots USA, Inc.*, 17 F.4th at 288-89 (cleaned up). That instruction is in keeping with the purpose of the general applicability requirement to prevent the government from "in a selective manner impos[ing] burdens only on conduct motivated by religious belief." *Cent. Rabbinical Cong. v. NYC DOHMH*, 763 F.3d 183, 196 (2d Cir. 2014).

Here, O'Leary concedes that the City did not favor secular conduct over religious conduct in applying the vaccine requirement (App. Br.

19). And tellingly, the only comparison raised in his complaint is to a coworker whose "similar" religious exemption request was granted (JA48-50)—only cutting against the notion that the City's process for religious exemptions somehow favored non-religious conduct. His argument goes nowhere.

O'Leary goes on to cite *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021) (App. Br. 20), but he misunderstands that case. There, the Supreme Court explained that where a law contains a system of individual exemptions, the City "may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Id.* at 534 (quoting *Employment Div. v. Smith*, 494 U.S. 872, 879 (1990)). It went on to explain that where a defined category of exemption or accommodation is provided, the relevant question is whether the law "prohibits religious conduct while permitting *secular* conduct that undermines the government's asserted interests in a similar way," *Fulton*, 141 S. Ct. at 1877 (emphasis added and otherwise cleaned up), which O'Leary concedes is not the case here (App. Br. 19). The Court did not say, as O'Leary suggests, that a process for individualized review of religious exemptions itself triggers strict scrutiny.

More fundamentally, it makes no sense for O'Leary to assert that affording a religious accommodation somehow triggers strict scrutiny

under the Free Exercise Clause. To be sure, this Court's "exceedingly narrow" holding in *Kane I* reflects that an accommodation process must generally apply *standards* that comport with the First Amendment. 19 F.4th 152, 167 (2d Cir. 2021). There, this Court found constitutionally suspect the City's across-the-board denial of exemptions where the leader of a religious organization has spoken in favor of the vaccine, reasoning that "it is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Id.* (quoting *Hernandez v. Commissioner,* 490 U.S. 680, 699 (1989)). But affording an opportunity for religious accommodation *alone* has never been thought to render a law suspect from a Free Exercise standpoint. O'Leary cites no case embracing that paradox. Nor does it make sense to apply a strict scrutiny framework to assess individual accommodation decisions resulting from a religious accommodation process—fundamentally fact-bound determinations made by employers.

## CONCLUSION

This Court should affirm.

Dated:  New York, New York
        January 6, 2025

Respectfully submitted,

MURIEL GOODE-TRUFANT
*Corporation Counsel*
*of the City of New York*
Attorney for Appellee

By: _____

LAUREN L. O'BRIEN
Assistant Corporation Counsel

100 Church Street
New York, New York 10007
212-356-0852
lobrien@law.nyc.gov

RICHARD DEARING
JAMISON DAVIES
LAUREN L. O'BRIEN
    *of Counsel*

23

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 4,584 words, not including the table of contents, table of authorities, this certificate, and the cover.

LAUREN L. O'BRIEN